I'm Carl Verity, Your Honor, and I want to thank you, Judge Smith, and members of the panel for hearing us this morning. I wanted to let the panel know that in attendance with us today are Patrick P.'s parents, his stepfather, Dr. W., and his mother, Gordine W., who are in the gallery. I'd like to reserve, if I could, three minutes for rebuttal and would ask the clerk's indulgence in helping me with that. Well, the clerk will help you. We don't necessarily help you. Understood, Your Honor. It's just like driving. I have to watch the lights. I'd like to begin by just focusing on the child fine mandate of IDEA. IDEA, as the Court is aware, is conditioned on a receipt of federal monies. Hawaii gets $39 million in fiscal year 2012 for implementing it as Congress has determined. The key feature of IDEA, or one of the key features of IDEA, is child fine, because obviously- This student was identified, right? I'm not sure why you're starting with this. Shouldn't we get into the substance of whether he deserved to have special education services? Identification being a technical term meaning deemed eligible. In other words, was an eligibility determination made? Because unlike the prior case in which the Court was looking at the construct of the IEP and whether or not it matched the needs of the specific student in question, this is a case where we reel back to the very beginning of IDEA and what the child fine mandate requires. And what it requires is, if there is a mere suspicion of need, then the child is deemed eligible. And what is supposed to happen at that point- Very good. Before you get to what child fine required, I'm interested in your argument as to whether or not that issue, the child fine issue, was exhausted administratively. It was, Your Honor, because the entire purpose of the due process request was to obtain a ruling that the student was eligible under the category of SLD, specific learning disabilities, based on his dyslexia and dysgraphia. Those were the key elements of the presentation to the Administrative Hearings Officer, who made extensive and thorough findings that, based on the testing of Dr. Yanagida, both in 2005 and in 2011, the evaluation by Dr. Ferguson, who is a Orton-Gilliam reading specialist, and the assessment by Dr. Ann Pelosi, who's a neuropsychologist, that this student manifests not only dyslexia and dysgraphia, which are not conditions that are cured, although they can be treated and addressed, like many other chronic conditions, but also ADHD. The Hearings Officer concluded, contrary to the DOE's position, that Patrick was eligible and met the criteria for specific learning disabilities set forth in the regulations. And she did so by weighing the credible evidence that was presented to her. Now, I've reviewed, and I'm sure this court has reviewed more than I have, Administrative Hearing Officers' decisions. That word credible, obviously, is a weighted word. It's designed to tell a potential reviewing court what the Administrative Hearing Officer is doing, and she's not making merely... But at this point, I appreciate your argument, but, I mean, it seems to me that the first issue I have to address, based on the issues you've appealed, is to whether there should have been a given more than minimal deference to the Administrative Hearing Officer's decision, right? Yes, of course. Because the District Court said, no, we're not going to give deference, very much deference at all to this decision, because the Administrative Hearing Officer made too many mistakes. And therefore, the District Judge said, we're going to make those decisions ourselves. Well, as Ms. Murakami was just arguing, the District Judge's role in reviewing the Administrative Hearing Officer's decision is not to second-guess them. But it is to make its own decision of the things that the... thinks that the Administrative Hearing Officer has made too many mistakes to make the correct decision. Well, not as to credibility, Your Honor. That's simply beyond the capability of... Well, you're talking about credibility of witnesses. That is correct. Credibility of Ms. Hugh, primarily? I'm not sure if I'm saying that right. Huey? It's Huey. Huey. Yes. So, as I understand it, that's the best I can do. But I believe it's Huey. And is your main argument that we should... And the District Court should have given deference to the Hearing Officer's determination that Ms. Huey had not carefully observed everything she needed to observe and really hadn't had a basis for the judgment that she made? Well, exactly. I mean, she didn't have any... She made no objective testing. She didn't understand that Patrick was receiving a modified curriculum. Orton-Gilliam, as the Court's aware from the briefs, is a multi-sensory language approach that's employed at Asset School across all domains. So even if the student is studying social studies or math or whatever at that particular moment, it's a strategy, a multi-sensory strategy to get them engaged in learning receptive and expressive language through the subject matter that they're using. Ms. Huey didn't appreciate that. Ms. Huey made two observations of less than two hours, did not understand that this was a modified curriculum, had no explanation as to how the small class size in any way matched what a copulate might offer, was totally speculative in her description of what copulate might offer, and conceded, as did Ms. Barra, that Patrick might have problems at copulate because of the nature of the school itself. So I took it that one error that you allege is that Ms. Huey didn't understand that ADHD was one of his disabilities and that being able to get up and walk around was an accommodation for that. Is that right? That's one of the mistakes. Did she also observe any dyslexia, accommodations, but not recognize them as such? Exactly. What were those? What were the accommodations for dyslexia? The accommodation for dyslexia is the Orton-Gilliam approach and allowing Patrick to give verbal, to respond to tests with verbal responses instead of written responses if needed. Those accommodations... Were those exhibited during the two observations that she did or were those just things that he had at other times? Those... I'm trying to parse, but obviously the accommodation of allowing him to get up and move around and deal with his ADHD was certainly something she observed. In terms of the actual curriculum and the manner in which it was administered with this multisensory approach was not something she ever discussed. She didn't speak to anybody at Asset School. She didn't interview anyone at Asset School. She did not ask to see the rubric by which the classes were conducted. She merely observed Patrick and in one case it was a substitute teacher who was teaching the class on that day. Another day, it was a math class which is extremely curious because Patrick's deficits are in language. If you look at his most severe deficits, they're in language. Now he is behind in math, granted, but it seems to me that based on the object of record, Dr. Yanagida, Dr. Ferguson, and Dr. Pelosi's assessments of Patrick, which you'd want to see, is how does he function in a language class? What are they doing that's helping him make progress? Because when you look at what she did, and the district court made the same error, they looked at Patrick without considering the effect and the need for the supports. In other words, the responses to the intervention he was receiving. The letter to Lily Felton is cited two or three times in both the opening brief and the reply brief. That is the United States Department of Education's position on this, that you cannot assess the student in a vacuum and assume that the student is making progress and doing fine. You have to assess the student without the supports and see how the student is doing under those circumstances to understand what the supports are. The example given in Lily Felton is a student who makes A's and B's would seem to be making progress and not need specialized instruction. But when you look at the fact that he's making A's and B's, he's doing that by responding to tests through oral methods and recording his responses because he has an inability to do so in writing. That, I think, is the key failure here in looking at Patrick was to assume that because he's making some progress in a small classroom, a specialized school that addresses both gifted and dyslexic students and is specially set up for that through the Orton-Gillingham method, which Dr. Yanagida specifically recommended in her first assessment of him in 2005 and that assessment did not change, that by not looking at Patrick within the framework, within the context of those services, you're not adequately getting a picture of his needs. The other problems are that we have clinical people, clinicians, Dr. Pelosi, Dr. Yanagida. We have a PhD reading specialist, Dr. Ferguson, all of whom recommend exactly the services that Patrick is being given and saying that he's making progress with those supports. And we don't have people on the side of the DOE saying he can do the same thing if given those supports in a DOE class. Now, the big, I think, the gaping hole in the logic here is this. Everyone, and that is the DOE, the district court below, the hearings officer, all agree that Patrick is a student with a disability. All of them agree that Patrick makes progress with the assistance and aids that he's receiving and assets. The disconnect is that... Well, I mean, Ms. Hui didn't really think there were any assistance, that there was any assistance being given. And I think, you know, I think the hearing officer clearly stated that  she was unable because of her lack of knowledge or interaction with the student's school and because the parents were not listened to at the IEP meeting. The father is a PhD, for example. The school really didn't understand Patrick. The other peculiar thing is everyone at the DOE accepted Dr. Yanagida's reports and assessments. So what you end up with is a child who is disabled, who everyone, including the DOE, agrees makes progress because of the assistance he's getting at assets, but who is never included, deemed eligible, even though on the eligibility worksheet some, but not all, the boxes are crossed. If you look at Ms. Barra's testimony, she's a master's level person. She's not a clinician, but she is the DOE psychologist because in Hawaii, they have the ability to practice only within the DOE. They can't make clinical diagnoses, but they act as psychologists in some capacity. She said herself, if you looked, instead of looking at the discrepancy measures, which Michael P. says you can't, and I frankly think that that's our winning argument no matter what, because both Ms. Barra and Ms. Hui said it was the discrepancy measures alone that drew the conclusion that Patrick was not, that led them to the conclusion that Patrick was not eligible. However, Ms. Barra said, you know, if you look at responses to intervention, which is specifically written into the new IDEA regs in which Michael P. specifically focuses on, she said it's a much different analysis and the decision might be made otherwise. That brings us all the way back to the beginning of my argument, which is if it's a close call, IDEA mandates that you pick that child up and provide services because if you don't, you're taking a risk that Congress does not permit you to take with this child's education and his future. I have two minutes and 17 seconds left. I'd like to reserve those for rebuttal if I may. All right. Thank you very much. Good morning, Your Honors. There are two main issues for review before this court. First is whether the district court erred in reversing the administrative hearing officer's decision, finding that the evidence presented by the Department of Education supported the determination that student did not meet the criteria for a finding of disability under the category of specific learning disability or otherwise known as SOD under the IDEA. The second issue is whether the district court abused its discretion in holding that the administrative hearing officer's decision should be given minimal deference. What was your burden in the district court? Was it to show that Patrick is not eligible for special education or was it to show that he had not met his burden before the hearing officer of showing that he was? So on appeal to the district court, it was that the hearings officer in her decision did not clearly look at all the evidence presented and actually in her decision discounted the Department of Education's witnesses who were deemed to be experts in requisite fields. In fact, as was pointed out, Ms. Wee. You're giving sort of a third option, I guess. So you're saying your burden in the district court was to show that the hearing officer had not done a good job. I thought maybe your burden was either to show that Patrick was not eligible for services or somehow that he had not met his burden in the hearing officer proceeding of showing that he was eligible for services. But you're saying a third thing? Yes. So if I may, it was twofold. Number one, it was that the parents or plaintiffs did not meet their burden in showing that student was not eligible under the law for IDEA, special education and related services. But once the hearing officer had made a determination that he was eligible, you're saying that your burden in the district court was just to show that that was wrong, that Patrick really had not met his burden. Do you have a case that explains that, that says that what you were supposed to show was that once there was already a hearing officer determination in his favor, that you kind of go back to scratch and ask whether he had met his burden? Well, actually, as I had mentioned just previously, in looking at the, I guess, totality of circumstances, in particular,  with respect to what the state, what the Department of Education argued, was that, in fact, the hearings officer decided its case based solely on parents on plaintiff's witness, in fact, just one witness who was stepfather, and discounted the evidence in total by way of oral testimony. Yes. Once you get through that, which I think is my colleague's question, and I'm glad she asked it, because it seems to me that once you get by the fact that there should be no deference given or minimal, at best, given the administrative hearing officer's decision, at that point, the district court has the determination to make, do they not? Once the administrative decision officer's is done, we give no deference or minimal deference to that, then the district court has a decision to make, don't they? Doesn't it? That's correct. And once having the district court make that decision, what is the burden you have? What do you do when the district court makes its decision? What is your burden? Because that seemed to me a question that I had down here to ask you. It seems to me that I know what my review is. It's for clear error when it is factual determinations, but it doesn't seem to me that I know exactly what your burden was when you were there. Is it the same burden that you have when you're in front of the administrative hearing officer? It seems to me that it is. Or is it not? I mean, I don't want to preempt my call. Because she's kind of pushing you a little further, but I'm just trying to make sure that you understand her question and you can reasonably respond. I think maybe my question comes from partly I'm not actually convinced that we should set aside the hearing officer's decision because I'm not actually convinced the hearing officer made so many mistakes. So maybe you could speak to what mistakes you think the hearing officer made so you can try to convince me that the hearing officer's decision should be set aside. Thank you very much. Now, first of all, if I can provide just a brief background history for this court. As of December 11, 2008, student was rescinded from eligibility for special education and related services. So that is fact. There was a settlement agreement, at which time parents also agreed that they would not challenge the rescinding of eligibility for special education and related services. But they didn't for that year. So my question is, what did the hearing officer do wrong in the decision that we're actually reviewing here? So as part of the following the administrative, what in the administrative hearing itself, parents who had the burden of proof produced only one witness, and that was stepfather. And stepfather, albeit has a PhD in counseling psychology, but by his own admission, he attested that he does not have a specialization or an understanding of the eligibility requirements for special education and related services, nor is he an expert in the IDEA or our Hawaii administrative rules, chapter 8-60. Right, so I understood that the hearing officer said, you know, he's not a lawyer, so he doesn't have the law. And he also wasn't an expert in terms of interpreting the test scores. But reading the hearing officer's description of his testimony, it seemed to me that the hearing officer had treated him as having some expertise in psychology generally and in being able to observe the student's learning style and learning needs. Is there anything in the record where you can point me somewhere where the hearing officer is saying that he's not an expert for those general observations? And I'm not disputing that stepfather has expertise for general observations, but in particular to the actual expertise that's required to determine eligibility, I would attest it would be analogous, for example, if you needed to get, you know, surgery for brain tumor. You wouldn't just go and seek, you know, a podiatrist, for example. You can have some general expertise in the area of psychology, but that doesn't mean that you're deemed an expert in the area of IDEA. But they also had the psychologist who had done the evaluation and testing, and that psychologist, who no, I don't think anyone challenged that psychologist's expertise,  and needed services, right? That is not correct. What's not correct about that? Dr. Yanagida's report. First of all, Dr. Yanagida's 2011 report, which was the most recent and contemporaneous to the eligibility meeting, was the document that would be relevant. And in fact, what Dr. Yanagida did state was that student presents with dysgraphia and dyslexia, and then gave her results of certain testings, standardized testings that were done, and gave recommendations, none of which were actually the private placement in question. And taking a look at those accommodations then, the eligibility team looked over every single myriad of recommendations and determined that based on not only the report, but also based on Ms. Wee, who was found, to be an expert in the area of special education, mild to moderate disability, as well as curriculum and instruction. She also conducted two observations at the private school. Now at two separate occasions, one of which was in front of the substitute teacher, and the other one, in fact, was an English class, not a math class, an English class, because that was his area of determined difficulty. So there were specific intentional observations that were conducted. And the hearing officer determined, as I read it, basically that her observations were not credible because she had not appreciated everything that she was observing. What was wrong with that finding? And why is that not a credibility finding that we have to defer to? Thank you very much for asking. What the hearings officer actually found, and I would think it would be illogical to have this finding, was that she discounted the Ms. Hui's observations because they weren't in a regular classroom setting. That's not how I read it, though. I understand that that's what the briefs are saying was the issue, and what the district courts maybe thought was the issue. But as I read the hearing officer's opinion, it's that Ms. Hui didn't realize that getting up and walking around the room was an accommodation for ADHD, that there were these special small classroom settings that she didn't appreciate what she was looking at. I don't think the hearing officer actually said you have to observe the student in a normal classroom. I don't see that statement in the hearing officer opinion. If I may state, I believe the hearings officer made some conclusory statements as to, despite not having anybody testifying for the private school, nonetheless, the hearings officer made some conclusory statements that obviously the school has special needs students. Obviously, it has this type of specialized instruction that is required for the student. But there was no evidence that was presented by way of oral testimony by anyone from the private school that showed, in fact, that what this student received was indeed specialized instruction. What the eligibility... This is the kind of general thing that I understood that the hearing officer to have accepted the father's testimony about the father described the classroom setting. And I don't think there was really a factual dispute about what the classroom setting involved was there. No, it is a small classroom setting. That in and of itself, however, does not deem a student eligible for special education and related services. One would need to show that what, in fact, this student needs is specialized instruction. For those reasons... But I understood the state said this student has dyslexia, has dysgraphia, but because he's performing at grade level doesn't actually need services. And what the hearing officer said is, well, he's only performing at grade level because he's in this special classroom and getting these accommodations. And Ms. Hui didn't recognize that. What's wrong? Where did the hearing officer go wrong in that? I would disagree that Ms. Hui did not recognize that because she, in fact, did clearly recognize the fact that, first of all, what she did was she went and asked the school personnel for a sheet showing what types of accommodations or modifications were being made for student at this private school. There were checked off areas of actual accommodations or modifications that were made. And in fact, when the eligibility team reviewed those accommodations, what the eligibility team found was that were that those accommodations are actually afforded at the DOE school to general education students having the ability to take a break, for example, to have extra time for assignments, to be able to perhaps give some verbal statements, different types of testing. Those are not, in fact, specialized instruction. Yes? I'm going to change the view. I've heard this, and it seems to me that this is the concern that maybe the administrative hearing officer glossed over a considerable factual testimony contradicting the findings and we're trying to determine if he did. I'd like to change it just a little bit. Did the administrative hearing officer properly apply the test for the special ed eligibility when applying the special learning disability criteria? That seemed to me to be the biggest problem and the reason one would not defer to the administrative hearing officer, because it seemed to me that the administrative hearing officer concentrated on the first prong of the test and didn't, and after having met the first prong of the test, gave no consideration to the second prong or the third prong. So maybe you ought to deal with that just a little bit, because I think that's at least something counsel needs to follow up with when he does some rebuttal. And I understood counsel's argument really to be about whether the district court did the right thing at the right time after saying that the administrative hearing officer, even given that he gave his little deference, the district court still made a bad decision and made the bad decision otherwise, which I guess you've kind of somewhat addressed. But what I want you to really address is what about this test that was supposed to be applied? Seemed to me the administrative hearing officer didn't apply the disability criteria test. And I would agree with you. That is precisely our argument in the fact that what this hearings officer found was that just based on disability alone, it's a lifelong condition that will remain unchanged. And therefore, based on the fact of his disability alone, that in and of itself justifies a need for specialized instruction or special education and related services. Disability alone, however, by law is not enough. What you need to find also is show that the impairment or disability adversely affects the educational performance and third, that the impairment must require special education and related services. And the question I had, and I guess the one we've not quite addressed yet, it didn't seem to me in reading what the administrative hearing officer did, that he even addressed the two second prongs. And that is correct. And that is why in our appeal, we argued that the hearings officer should be afforded minimal deference because... Wait, could I just ask though? At the bottom of 353, the hearing officer says that the SLD worksheet completed by the eligibility team showed that the student is not achieving adequately for his or her age at meeting grade level standards. And that because of this, the student is eligible. Why isn't that the next part of the test? The part that you just told Judge Smith wasn't addressed. Well, test scores by themselves in and of itself is not... Does not demand a showing of special... being eligible for special education and related services. It's a consideration based on performance, testing, as well as required observations of students' performance in his regular classroom setting, which was done, as well as whatever reports that the school could receive from the private school. That in total, coupled with the fact that what the eligibility team did was look and scrutinize through every document that they had before them, determined that number one, that there was no discrepancy between the cognition and his actual academic achievement. And that based on the teacher's reports, that student was an active listener, participated in class, sincerely engaged... But you're saying what the eligibility group found, right? That's correct. But I think Judge Smith's question was, what did the hearing officer talk about? And the hearing officer did talk about the student not being at grade level, does not adequately achieve for his age, or meet state approved grade level standards in one or more of the following areas, written expression, reading fluency, and reading comprehension. Isn't that the hearing officer? I mean, you disagree, but didn't the hearing officer address it? The hearing officer picked and chose certain results of the comprehensive testing, picked and chose, and plugged those into the decision. Those weren't the comprehensive test scores The comprehensive test scores showed that, in fact, student was performing at an average level. Some things, but not others, right? But in total, if you look through, as was testified by the school psychologist, reviewing the assessment in total showed that, in fact, student did make gains, was performing at average or above average in some areas. And in fact, based on the observations, was clearly able to demonstrate understanding, was an active participant. There were no accommodations that were observed, and it was not because Ms. Wee is incapable of understanding what accommodations are. She has an expertise in a doctorate in curriculum and instruction, and an expertise in special education. So she is aware of what types of instruction would be classified as specialized instruction. And clearly, in this case, those were not the case. All right. Thank you very much. You've gone over, and I'm going to stop you. I'm going to turn it back to counsel. Mr. Varady, you've got two minutes. Thank you, Judge Smith. To just address a couple of questions you asked, on the appeal of the administrative hearing officer's decision, it's limited de novo review. There's deference granted if the court, either the district court or this appellate court, believes that the hearings officer did a thorough job and made careful findings. If the district court or the appellate court believe that that's not the case... Wait a minute now. It seems to me you're saying our review is the same. It duplicates the district court review. Is that what you're saying? I believe that's correct, Your Honor. I think that... Well, just a minute. But doesn't our case law say the district court has some discretion in whether or not, and to what extent, to accept the administrative hearing officer's findings? Not exactly, Judge, it just seemed... Not exactly? What exactly does it say? Well, what it exactly says in Amanda J. is that the district court should defer to careful and thorough findings. And, if I may finish, use a less intrusive tool of review, rubric of review, than would be otherwise the case  If the district court finds that those findings were not careful and thorough, then the amount of deference the district court is required to give is less, right? That's why I'm going to go to Judge Smith's second question. Is the answer yes or no? Yes, the answer is yes. All right, now, so, in that sense, doesn't the district court exercise discretion as to how much deference to give to the AHO's decision? And this court reviews whether... Well, just a minute. The answer is yes. All right, so, if the district court makes a discretionary decision, we don't go in and start all over, do we? Don't we owe some deference to the district court's decision? That's not the case. What case says that? Amanda J. What case says that? Amanda J. Amanda J, okay. But, just a minute. It seems to me that once I get it, if the district court is determined to give no deference or little deference to what the Administrative Hearing Officer has done, that then, at that point, I have a decision whether there's some deference on law, because it's de novo, no differences to law, because it's de novo. But if I'm looking at what the district court then makes, it's his decisions as to facts, I've got to find clear error, don't I? What you have to do is do the same thing that Amanda J. says, is you have to look at the record to determine whether or not that discretion was exercised appropriately. By the district court now. And the only way you can do that, given the unique form of limited de novo review that exists under IDEA cases, at both the district court and this court's level, is to look at the thoroughness of the Administrative Hearing Officers. Just a minute. If the district court has not given any deference to what the Administrative Hearing Officer did, and then, at that point, has made its own decision, if I agree with the district court as to whether thorough and careful, then it seems to me that I start reviewing the district court's findings, not the Administrative Hearing Officer's findings. That's exactly right. At that point, it's clear error as to factual conclusions. That is correct. Okay. That is exactly correct, which is why I'm trying to answer the second question. Well, when you say that is correct, and that's the opposite of what you told me earlier, because when I asked you earlier, it seemed like you were saying our review is exactly the same as the district court's. You said, yes, that's true. What I said... What you're saying now is, no, it's not true. Well, Judge, I don't mean to argue, but I don't... I'm not given a choice here. What I'm saying is that you can only... You, this panel, can only address whether or not the district court exercise its discretion appropriately by taking into account the thoroughness of the Administrative Hearing Officer's decision. Because if you disagree with the district court, that that decision... And you come to the conclusion that it was thorough, and it was well-reasoned, and the district court should not have exercised the level of discretion that it did, then you are fully authorized to overrule the district court on its... And the only way of doing that... So you're saying that our first question is whether the Administrative Hearing Officer's decision should be given deference. But if we then agree with the district court, then at that point, we review what the district court did under our normal... a normal analysis of what a district court does, which is there are questions of law and there are questions of fact. But as to fact, it's clear air. Of course, Your Honor. But you can, as I said, you can only get there by backing up to the AHA. I understand what you're arguing. So now, what I wanted to say in response to your second question, when you asked Ms. Murakami, what's your burden? Let's assume that she's correct and that the Administrative Hearing Officer's decision is entitled to no deference. The burden then becomes to prove by a preponderance of the evidence that this student was not or was eligible. The problem that the deal... Is that her burden or yours? She's the appellant in that case. And the Schaefer and Schaefer versus Wiest says that whoever is advancing the argument has the burden of proof. So at the... But it seems to me then what you're... And this is why I thought her question was very good. Uh, if in fact, the Administrative Hearing Officer is given no deference, at that point, it seems to me, and I'm asking you to help me, that the burden falls back to where it was in front of the Administrative Hearing Officer. That would be... I mean, that would be the norm. And all I'm trying to do is get you to tell me what the case precedent is and what it is that we... Because if the state then bears the burden, then there's a different question. Yes, that's correct, Your Honor. That's why I was interested in my colleague's question. Yeah, I'm pulling my brief just to see if I cited Schaefer versus Wiest. I did not see it, so... But I might be wrong. I look for this. Yeah, Schaefer is the case. The history of IDEA was originally under IDEA, the hearings officers around the country and the courts construed the burden approved to be exclusively that of the school. So the school district board, the burden approved in every case. That changed under Schaefer versus Wiest. It's a United States Supreme Court case. I do not see it cited in my opening brief. It's unlikely that I cited it in my reply brief. I'd be prepared to put... We can get... Yeah, it's Schaefer, right? S-C-H-A-E-F-F-E-R. And I believe the last name is W-E-A-S-T. All right. So what that says is whichever entity is advancing the hearing bears the burden of proof. So what happened after Schaefer was that parents then bore the burden of proof whenever they were the filing party below. If the DOE was the filing party in an administrative hearing, which they occasionally do to get kids services who need them, but the parents are resistant, then the DOE would have the burden of proof. On the appeal, the roles reverse. The point I'm trying to make about this and the punchline that I'm trying to get to is if you look at what the district court judge was left with at that point, it's the two DOE members saying our decision was made on the basis of discrepancy measures. That is the difference between cognitive ability, which is an IQ test, and academic performance. And because it didn't exceed 1.5 standard deviations, we are not going to deem Patrick eligible, and we're going to look at him in a vacuum rather than looking at responses to intervention. Mr. Veraday. Judge, if I could just finish my sentence. Michael P. says you cannot do that because discrepancy measures cannot be the sole method by which eligibility is determined. That was pointed out both to the hearings officer and to the district court. Michael P. is this court's most recent pronouncement on this issue, and it would be inappropriate for the district court to allow the DOE to backslide into discrepancy measures after this court has already said you cannot do that. And in fact, they changed their regulations. All right, Mr. Veraday, you said now in this case because the DOE is the appellant to the district court that had the burden of proof, right? That is correct. Right now, I mean, is that on the record? Is it supposed to deduce new evidence or what is it? It's on a closed record before the... Not at all, Your Honor. Under IDEA, the district court has a wide discretion under those circumstances, regardless of who appeals. The district court can affirm. The district court can remand. The district court can hear and receive. So it's not like an appeal from the district court to the court of appeals, is it? I mean, you... In other words, if you wanted to in the district court, could you deduce additional evidence? If... Either side can, right? Either side could. You can't do that here, if we apply your principle, say, well, you're the appellant here, so you have the burden of proof, right? That's correct. So if you have the burden of proof, I mean, but you can't deduce evidence here. So it's a different appeal, isn't it? The appeal is different and that's why it's so important. So it's not the same as... So the district court, what I'm getting at is the decision it makes is not what we call a classic appellate decision. No, it is a very interesting hybrid de novo review. So that affects the standard of review for us when it comes here, doesn't it? It does, and that's my point. The district court relied exclusively on the evidence before the administrative hearing officer, did not deduce any additional evidence. Whatever it relied on, it made a decision that was discretionary. No, it applied an erroneous legal standard by allowing the DOE to argue successfully that contrary to Michael P, it could use discrepancy measures and not provide IDEA services to the student and an IEP, which by the way is what... That's like an error of law. It is an error of law, Your Honor. And the problem with this is the IEP, it has the force of law. That is important. It's not this, you know, we'll take Patrick into our school and we'll do right by him, don't worry. If you look at the Union School District versus Smith, among other cases that are cited, this court has said repeatedly, it's not enough to say, we'll do a good job, don't worry. You have to understand the student. You have to have present levels of performance, goals and objectives and the like. And once those are in place, those bind the parties with force of law and both parties, both the parents and the school have to live with that, which is what the DOE was trying to avoid in this case. I really thank you for all the indulgence that you've given me. I very much appreciate your argument, Mr. Brady. And I also appreciate yours, ma'am. The argument here was quite helpful. I'm not sure that really your briefs outlined what we've talked to you about just recently for 20 minutes, which was a big issue for me. And I apologize for that, Your Honor. We're imperfect. Well, I'm not saying you're perfect, you're imperfect. I'm thanking you for taking this opportunity. I appreciate it. I appreciate it, Your Honor. Thank you very much. Thank you. This court is now in recess. All rise. This court for this session stands adjourned.
judges: Tashima, Smith, Friedland